## CARTER v. STATE.

## Opinion delivered April 28, 1913.

1.  HOMICIDE—INDICTMENT—SUFFICIENCY.—An indictment for murder in the first degree which charges that defendant "did unlawfully, feloniously and with malice aforethought and after premeditation and deliberation kill and murder," etc., is sufficient. (Page 128.)

2.  HOMICIDE—EVIDENCE—THREATS BY THIRD PERSON.—Under a plea of self-defense to an indictment for murder, evidence of threats made by a third person against defendant, is incompetent, when the same has no bearing upon the question whether or not the deceased was the aggressor. (Page 128.)

3.  HOMICIDE—EVIDENCE—ACTIONS AND REPUTATION OF DECEASED.—In a trial of defendant under an indictment for murder, evidence of uncommunicated threats by deceased against defendant, and of the character of deceased for turbulence or violence is admissible. (Page 129.)

4.  APPEAL AND ERROR—HOMICIDE—ERROR CURED HOW—SENTENCE FOR LESSER CRIME.—When defendant is convicted of murder in the first degree, and the evidence is sufficient to sustain the conviction, where the trial court committed error in excluding certain testimony offered by defendant and in refusing to give an instruction asked by him, where, under the testimony of defendant, the jury could have found him guilty of voluntary manslaughter, all prejudice from the errors of the court may be removed by sentencing defendant for voluntary manslaughter. (Page 130.)

Appeal from Garland Circuit Court; *C. T. Cotham,* Judge; reversed.

STATEMENT BY THE COURT.

The indictment charged that "J. R. Carter, on the 29th day of July, 1912, in the county of Garland aforesaid, did unlawfully, feloniously, and with malice aforethought and after premeditation, and deliberation kill and murder one Bud Woodfork with a certain pistol which the said J. R. Carter then and there had and held in his hand, the said pistol being then and there loaded with gunpowder and bullets, against the peace and dignity of the State of Arkansas."

The facts are substantially as follows: The appellant and deceased had an altercation in a restaurant, in the city of Hot Springs, during which the deceased slapped the appellant twice on the jaw with sufficient force to knock off his hat. There is some conflict as to whether or not he struck him with his closed fist or slapped him, but the proof shows that the appellant was not knocked down by reason of the blow. Carter had been practically an invalid for a year or two preceding this difficulty, and deceased was a strong, husky man, being a laborer and a ball player. They were separated by the person in charge of the restaurant, and the deceased was pushed out at the front door, and told to go home. Deceased grabbed up some rocks and came to the front door for the purpose of throwing at appellant, but was prevented by the manager of the restaurant. He went around to the side door, but was stopped there by other persons from throwing in. He went on down the street, and was gone twenty or twenty-five minutes, later coming back to the restaurant. Then appellant went out the side door, and was told to go home. The proof shows that he went on up to the saloon, where he had been employed, put on his coat and put a pistol in his pocket. He stood around perhaps twenty or twenty-five minutes at the saloon, and then started out, as he says, to get something to eat. The proof shows that he passed by the restaurant at which he had been in the custom of obtaining his meals, and went directly to the restaurant where he had had the difficulty with deceased. After

walking about 'midways of the room, he raised his gun and fired one shot, which struck deceased in the breast. Deceased hallooed, ''I am shot,'' and ran out at the side door and across the street, about a hundred feet, where he fell dead; that deceased had a rock, about the size of his fist, in his vest pocket, and appellant testified that the deceased was reaching into his left pocket at the time he shot; that at the time of the killing there was no renewal of the quarrel, and nothing was said by either party at the time the shooting actually occurred.

When the first altercation took place at the restaurant a man by the name of Blue Jackson was with the deceased, Woodfork. He called appellant a vile name and urged the deceased to jump on appellant, and encouraged deceased by telling him he was his friend and would be with him.

Appellant offered to introduce testimony of what Blue Jackson did and said in a saloon when the appellant was not present. The court refused to allow this testimony, but ruled that he would permit testimony as to what all the parties said and did who participated in the second difficulty, some twenty or thirty minutes before the killing, while the appellant and the deceased were present, but would not permit the introduction of declarations and acts of third parties which were said and done outside of the presence of both appellant and the deceased.

The appellant was asked if anything happened that caused him to believe that he was being followed by Blue Jackson and Woodfork, and the court refused to permit the witness to answer, and the appellant saved his exceptions.

Appellant offered to prove that the deceased, within a few minutes after the attempted assault of appellant with rocks, was at a place near the scene of the difficulty and made a statement to the effect that he intended to get the appellant or kill him before the night was over. This threat was not communicated to the appellant and the court excluded it, to which ruling appellant duly ex-

cepted. The court also excluded offered testimony of the general reputation of the deceased in the community where he resided for violence and turbulence.

Among others, the court gave the following instruction, towit:

"If you believe from the evidence that threats were made in this case, it is proper for you to consider such evidence for the purpose of shedding light upon the state of mind existing between the defendant and the deceased at the time of the difficulty, and immdiately thereafter."

The court refused appellant's prayer for instruction No. 12, as follows: "It is competent to prove threats by either party, against the other, if such have been made, for the purpose of shedding light upon the state of mind existing between the parties at the time of the difficulty, and also for the purpose of shedding light upon which of the two was the aggressor in the combat. Threats on both sides, either those against the defendant, or those made by him are to be considered by you, if any were made, for the purpose of shedding light as to the condition of mind between the two parties at the time of the difficulty, and as I said before, as tending to shed light upon which was the aggressor in the difficulty."

The appellant duly excepted to the ruling of the court. Appellant was convicted of murder in the second degree and sentenced to twenty-one years in the State penitentiary, and appeals to this court.

*Appellant, pro se.*

1. The demurrer to the indictment should have been sustained. 26 Ark. 323; 27 Ark. 493; 71 Ark. 150.

2. All facts concerning the assault of deceased upon appellant shortly before the killing are part of the *res gestae,* and are admissible in evidence, if sufficiently connected with the main transaction to throw some light upon it, and to show the motives of the parties to the killing. 34 Cyc. 1642; 21 Cyc. 927; 43 Ark. 103; 44 S. E. 985; 114 Am. St. Rep. 92; 61 N. E. 337; Jones on Evidence 429; 6 Enc. of Ev. 610; *Id.* 634; *Id.* 613.

3. · The offered evidence of threats was competent testimony to show who was the probable aggressor. 6 Enc. of Ev. 767; 55 Ark. 593. And without question the court erred in refusing to give instruction 12, requested by appellant. 84 Ark. 121; 69 Ark. 148; 29 Ark. 248; 85 Ark. 381.

*Wm. L. Moose,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

1. The indictment is good and the demurrer was properly overruled. Kirby's Dig., § 2229; 61 Ark. 88; *Id.* 358; 64 Ark. 144; 94 Ark. 65.

2. Testimony as to Blue Jackson's conduct in the saloon was properly excluded. Acts and declarations of third parties done and said out of the presence of both the appellant and deceased, were not admissible.

Even communicated threats by a third party would not justify one in arming himself and killing another by mistake. 145 S. W. 559, 562; 100 Ark. 301, 312.

"Uncommunicated threats are never admissible except for the purpose of showing who was the aggressor if there is any conflict of the evidence on that point."

3. The instruction given by the court was correct; but if, as appellant complains, it was ambiguous, because of the use of certain words, a general objection to it was not sufficient. 105 Ark. 37; 93 Ark. 605.

WOOD, J., (after stating the facts). The indictment was sufficient. *Jones* v. *State,* 61 Ark. 88; *Turner* v. *State,* 61 Ark. 359; *LaRue* v. *State,* 64 Ark. 144; *Green* v. *State,* 71 Ark. 150; *Harding* v. *State,* 94 Ark. 65.

The court did not err in excluding the offered testimony of the conduct of Blue Jackson not in the presence of the appellant. It is neither alleged nor proved that Blue Jackson and deceased Woodfork were in a conspiracy to assault the appellant, and the testimony is not shown to have been connected in point of time so as to constitute a part of the *res gestae. McElroy* v. *State,* 100 Ark. 301-12. Any threats or other conduct of Blue Jackson towards appellant could not have been competent un-

der appellant's plea of self-defense, for it could have had no bearing on the question of whether or not the deceased was the aggressor. *Jackson* v. *State,* 103 Ark. 21, 145 S. W. 559.

Moreover, the appellant, after the court had announced that it would exclude the offered testimony, did not offer to show what Jackson did or said concerning him.

The testimony of the appellant to the effect that when he returned to the restaurant, Woodfork "kinder put his hands around here and turned," in connection with the other testimony, in which the position of the deceased was demonstrated before the jury, was sufficient to call for a submission of the question to the jury as to who was the aggressor immediately before the fatal shot was fired. This testimony of appellant tended to show that the deceased, Woodfork, was the aggressor, and the offered testimony of the uncommunicated threats of Woodfork against appellant just prior to the fatal rencounter, and also the offered testimony as to the character of Woodfork for turbulence and violence, was competent as tending to corroborate the testimony of the appellant on this point.

In *Palmore* v. *State,* 29 Ark. 248, we said: "Threats, as well as the character and conduct of the deceased, are admissible when these circumstances tend to explain or palliate the conduct of the accused. These are circumstantial facts which are a part of the *res gestae* whenever they are sufficiently connected with the acts and conduct of the parties, so as to cast light on that darkest of all subjects, the motives of the human heart." See also, *Jackson* v. *State, supra; Long* v. *State,* 76 Ark. 493.

It follows that the court erred in excluding the offered testimony as to the uncommunicated threats of Woodfork against the appellant, and also the offered testimony of witnesses as to the character of the deceased for turbulence or violence.

The court also erred in not giving appellant's prayer for instruction No. 12. The uncontroverted evidence,

however, of the appellant himself shows that he was at least guilty of voluntary manslaughter. He armed himself and returned to the scene of the previous altercation when there was no necessity for doing so, and the conduct of the deceased, as shown by the appellant's own testimony was not sufficient to justify or excuse the homicide. Even according to his own testimony, he acted without due care and circumspection, and that is no testimony to warrant a finding that the killing was done in self-defense. The proof was ample to have sustained a verdict of murder in the first degree, but under the testimony of appellant, the jury could have found him guilty of voluntary manslaughter.

Therefore, appellant was prejudiced in the refusal of the court to allow the offered testimony, and in refusing to give prayer No. 12 of appellant. All possible prejudice, however, from these errors, in our opinion, may be removed by sentencing appellant for voluntary manslaughter, and if the Attorney General so elects within fifteen days a judgment will be entered remanding the cause with directions to that effect, otherwise the judgment will be reversed and the cause remanded for a new trial.