VALENTINE *v*. STATE.

Opinion delivered July 7, 1913.

1. APPEAL—CONTINUANCE—DISCRETION OF COURT.—The action of the trial court in the exercise of its discretion in overruling a motion for a continuance, will not be disturbed when the motion was asked on the ground that a witness was absent, and it appears that the witness was absent from the State, or his whereabouts were unknown. (Page 598.)

2. WITNESSES—EXCLUSION FROM COURT ROOM—DISCRETION OF THE COURT. —The matter of excluding witnesses from the court room while they are not on examination is within the sound discretion of the court, and will not be reviewed when no abuse of discretion is shown. (Page 600.)

3. WITNESSES—EXCLUSION FROM COURT ROOM—ADMONITION.—When witnesses are put upder the rule it is customary and better practice to instruct them not to talk to each other about the case, but it is entirely within the discretion of the trial judge as to whether such instructions are necessary to the ends of justice; and when such instructions are not given to the witnesses, it must be presumed, in the absence of a showing to the contrary, that it was not

necessary in order to secure to the appellant a fair and impartial trial. (Page 600.)

4. TRIAL—CONDUCT OF TRIAL—REMARK OF JUDGE.—In a trial for homicide, a witness was asked if deceased drank. The question was objected to, and the court said, "It is a violation of the law to kill a drunken man." Held, the remark will be presumed to have been made to counsel and not to the jury, and that it was not an expression of the court's opinion. (Page 601.)

5. TRIAL—ARGUMENT OF COUNSEL.—Remarks of prosecuting attorney in his argument, that defendant was guilty of the highest crime known to the law, and that it was the duty of the jury to so find, held, to be proper argument. (Page 602.)

6. HOMICIDE—SELF-DEFENSE—INSTRUCTIONS.—A requested instruction that, although defendant went to a house where he knew deceased to be, and that deceased would probably attack defendant, that if, in the encounter, defendant acted in self-defense, he must be acquitted, was properly refused, being opposed to the rule that one must do everything possible to avoid a killing. (Page 602.)

Appeal from Jackson Circuit Court; *R. E. Jeffery*, Judge; affirmed.

STATEMENT BY THE COURT.

On or about February 10, 1913, the appellant killed one Vernon Neely in Jackson County, Arkansas, at the home of Mollie Mays, about 9:30 o'clock in the evening. Vernon Neely arrived at Newport about 4 o'clock on the day of the killing. He went to Newport on the local train, and was accompanied by two other negroes, Hardley Taylor and Efford Allison. They came to Newport from Beebe. After they got to Newport they went to one of the saloons and drank some beer together. After this, and about the hour above stated, appellant went to the home of Mollie Mays and into the room where Vernon Neely and some other negroes were congregated. The testimony shows that he punched Allison in the side with his gun, which was a twelve-gauge, single-barrel shotgun, and caused him to move out of his way. The deceased turned his head to see who had come into the room, and was shot underneath his right nostril and instantly killed.

The testimony tends to show that Neely made no hostile demonstration whatever toward the appellant. Allison attempted to knock the gun up, and thus prevent

appellant from shooting Neely, but the gun fired before he struck it.

There was testimony on behalf of appellant tending to prove that the deceased had been making threats against him because of the fact that appellant had been keeping company with one Ophelia Mays, a former sweetheart of the deceased. These threats were communicated to the appellant, and were to the effect that Neely had come to Newport to kill him.

There was testimony tending to show that defendant went into the house in question, not knowing that deceased was in there; that deceased slapped the girl claimed to be his sweetheart, looked at appellant and started at him with a quick motion, drawing a knife; that appellant then presented the gun, and that the gun was knocked up by Efford Allison, and discharged.

The above is substantially the testimony on behalf of the State and of the appellant upon which the appellant was tried on an indictment charging him with murder in the first degree, and convicted of murder in the second degree, and sentenced to twenty-one years in the penitentiary.

*Appellant, pro se.*

1.  The court erred in denying appellant's motion to vacate the order reciting waiver of arraignment, plea, etc., on the ground that he was not at the time represented by counsel, did not authorize a waiver of arraignment, and did not understand the effect thereof, etc. 84 Ark. 100.

2.  In overruling appellant's motion for a continuance, the court abused its discretion, because, (1) appellant used all diligence that could be expected of him under the circumstances to procure the attendance of the witness, Roddy; (2) his testimony was vital to appellant's defense, and would probably have secured an acquittal, and (3) his attendance could have been procured had the case been continued. 100 Ark. 301; 99 Ark. 394.

3.  The court ought, on its own motion, to have in-

structed the witnesses not to talk about the case among themselves, and it was an error when his attention was called to this omission by motion to refuse to so instruct the witnesses.

4. It was competent to inquire of the witness, Taylor, if Neely drank or was drinking, the defendant having the right to show by testimony that deceased was drinking shortly before the fatal rencounter; and it was error for the court to remark, on the State's objection to the question that, "It is a violation of the law to kill a drunken man." If the remark was intended as a declaration of law, it was incomplete, for it is not a violation of law to kill a drunken man in necessary self-defense.

The remark was in fact a declaration by the court upon the weight of the evidence, and that the defendant was guilty. Art. 7, § 23, Const.; 99 Ark. 558; 43 Ark. 73.

5. Instruction 7, requested by appellant, should have been given.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. It was not error to overrule the motion to vacate the order reciting the waiver of arraignment, plea, etc. The order itself is conclusive here. 87 Ark. 50, 52. No prejudice is shown, and without it appellant will not be heard to complain. 55 Ark. 342, 18 S. W. 239; 72 Ark. 145, 151.

2. The motion for continuance was also a matter within the sound discretion of the trial court, which will not be controlled except in case of manifest abuse. In this case the court found that the witness was not in the jurisdiction of the court. 100 Ark. 301.

3. There was no error in not instructing the witnesses not to talk about the case. 101 Ark. 155; 93 Ark. 316; 32 Ark. 207, 209.

4. The court's remark to the effect that it is a violation of law to kill a drunken man, was addressed to counsel for appellant and the prosecuting attorney, and

was in no sense an expression of opinion as to the guilt of the accused, but was its reason for excluding any further testimony along the line appellant was examining the witness. 2 Ark. 512, 575.

5. Instruction 7, requested by appellant, was properly refused. A trial court is not required to repeat its instructions.

Wood, J., (after stating the facts). Appellant filed a motion to vacate the order of court reciting waiver of arraignment and the entry of a plea, and the order setting the case for trial on a certain day, alleging that the appellant had no counsel to represent him at the time, and that he was therefore ignorant of the effect of the waiver of arraignment and the purported entry of the plea, and the setting of the case for hearing, etc.

The record recites that, ''On this day comes the State of Arkansas, by her attorney, C. M. Erwin, and comes said defendant in his own proper person, in custody of the sheriff of Jackson County, and by his attorneys, Phillips, Hillhouse and Boyce.''

The record itself refutes the motion of the appellant. There is no sufficient showing to impeach the recitals of the record. Moreover, appellant is not shown to have been prejudiced by the matters set up in the motion, even if they were true. The matters complained of are matters proper to be shown in the record entries. The court did not err in overruling the motion to vacate.

The appellant moved to continue the case on account of the absence of witness, Will Roddy, alleging that Roddy was present at the time Neely was killed, and would swear that Neely was advancing upon appellant in a threatening manner with a knife drawn. Appellant alleged that he had used due diligence to procure the attendance of the witness, and that the witness was not absent by the consent, procurement or connivance of appellant; that the witness was within the jurisdiction of the court, and that appellant could procure his attendance at the next term.

Appellant sets up, in addition to the formal grounds for a continuance, that he could not procure counsel to represent him, and that the counsel who did represent him were appointed by the court, and that they did not understand that they were to have the full responsibility of representing the defendant until Monday, February 24, 1913, and that the cause was set down for trial on February 25, 1913, that his attorneys, therefore, had not had sufficient time to prepare for his defense; that they had not had time to subpoena witnesses, nor to consult with the witnesses, nor to consult with the defendant with reference to his trial in time to have the witnesses present that were necessary to his defense.

When the motion for a continuance was filed, with its supporting affidavits, the court postponed the trial until March 5, 1913. The appellant then renewed the motion for a continuance, setting up substantially the same facts shown in his first motion.

The sheriff, who had a subpoena for the absent witness, Will Roddy, testified that he had made an effort to serve him, and he had learned from his deputies and others that he was out of the State. He said he had used due diligence in trying to locate him ever since he had had the subpoena; that he didn't go to the home of Will Roddy in Newport, nor to his usual place of abode, and didn't know that Will Roddy was out of the State, but to the best of his knowledge, he knew that he was not in Jackson County. Other witnesses testified that they were told by Will Roddy, after the killing, that he was going to Missouri.

The court overruled the original motion for a continuance, and postponed the trial to another day in the term, and when the case was called on the day appointed, appellant filed a supplemental motion, as we have stated, and offered to introduce the testimony of Will Roddy's wife to the effect that she had recently heard from Roddy, and that she was expecting him home soon; and appellant alleged that he had sent several telegrams to Roddy at different places, and had received information that he.

was working on the railroad at Malden, Missouri, and appellant exhibited a telegram showing that the gang with whom Roddy was supposed to be working had gone south from Malden, Mo., and that Malden was just north of the Arkansas State line, and contended that, therefore, Roddy was now within the jurisdiction of the court. The court declined to hear the testimony, and overruled the motion.

It was within the discretion of the court to overrule the motion for a continuance upon the showing made. The court doubtless concluded that there was no certainty of procuring the attendance of the witness at the next term of the court for the reason that said witness was beyond the jurisdiction of the court.

The testimony was sufficient to warrant the court in finding that witness, Roddy, was in Missouri, or that his whereabouts were unknown, and that there was no reasonable certainty of procuring his attendance if the case were postponed. The court heard the evidence, and we can not say that he abused his discretion in overruling the motion for a continuance.

The court did not err in refusing to instruct the witnesses not to talk about the case among themselves while in the witness room. The matter of excluding witnesses from the court room while they are not on examination is within the sound discretion of the court, and will not be reviewed when no abuse of discretion is shown. *Marshall v. State,* 101 Ark. 155. When witnesses are put under the rule, it is customary and the better practice to instruct them not to talk to each other about the case, but it is entirely within the discretion of the trial judge having supervision of the matter and knowledge of the witnesses and their surroundings as to whether such instructions are necessary to the ends of justice; and where such instructions are not given the witnesses we must presume, in the absence of a showing to the contrary, that it was not necessary in order to secure to the appellant a fair and impartial trial. There is nothing in the record to

show that the substantial rights of the appellant were prejudiced by the court's ruling in this respect.

During the taking of the testimony, a witness was asked the following by defendant's counsel, on cross examination, concerning the deceased: "Did Neely drink?" The question was objected to by counsel for the State, and the court remarked: "It is a violation of the law to kill a drunken man." Appellant excepted to the remark of the court. The examination of the witness was then continued as follows: "Q. Neely drank, didn't he? Did he drink? A. Yes, sir; he drank a glass of beer."

The remark of the court was made while the defendant was endeavoring to ascertain whether or not the deceased, on the night of the fatal rencounter, was drinking. We think, in the absence of a showing in the record that the remark of the court was addressed to the jury, that it must be considered as a remark made to counsel, giving his reasons for allowing the question rather than as expressing his opinion upon any question of fact. The court permitted the question to be answered, and therefore permitted the fact to be elicited which appellant was seeking to prove, and the incidental remark of the court during the examination of the witness, addressed to counsel, was not an expression of his opinion upon any fact proved, and could not have been considered by the jury as an opinion of the court as to the guilt of the appellant. If appellant conceived that the remark was made as an expression of the opinion of the court as a proposition of law, he should have asked the court to instruct the jury not to consider the remark as an expression of his opinion upon the weight of the evidence, and if the court had refused, then appellant would have been in an attitude to complain. But, as we view the remark, it was not intended by the court to be, and could not have been considered by the jury as an expression of an opinion of the court upon any question of fact in the case. There was no evidence that the deceased was a drunken man, and the fact that appellant desired to show was shown by the

question and answer, *i. e.,* that Neely did take a drink the night, he was killed.

We have examined the objections made to the remarks of the prosecuting attorney in his closing argument to the jury, and it is unnecessary to set them out in the opinion. It is sufficient to say of these that they were but the expressions of the opinion of counsel on behalf of the State that the appellant, under the circumstances shown in evidence, was guilty of the highest crime known to the law, and that it was the duty of the jury to so find by their verdict. These remarks were clearly within the bounds of legitimate argument. *Leonard* v. *State,* 106 Ark. 449; *James* v. *State,* 94 Ark. 514.

The appellant objected to the refusal of the court to give his prayer for instruction No. 7, which is as follows:

"If Neely, at the time Valentine fired the fatal shot, was making a demonstration, as if to draw a weapon to be used against Valentine, under such circumstances as made it reasonable for him to believe as such circumstances appeared to him, that he was in imminent danger of losing his life or receiving great bodily harm, and he, Valentine, while acting in good faith, and under such belief, fired the fatal shot to protect himself, he is not guilty of any crime. And this would be true, although you might believe from the evidence that at the time Valentine went into the house in question, he knew that he would likely meet Neely there, and that Neely would likely make an attack upon him."

All that part of the prayer except the last sentence was fully covered by correct instructions on the law of self-defense which the court gave. The last part of the instruction was not a correct statement of the law, and was calculated to confuse and mislead the jury. Before one will be justified in killing his adversary in self-defense, he must do everything in his power consistent with his safety to avoid the danger and avert the necessity of the killing. The latter part of the prayer might well be construed as in conflict with this wise provision of the law.

Other questions are presented in appellant's brief, but we do not deem them of sufficient importance to require discussion. The record is free from error prejudicial to appellant, and the judgment is therefore affirmed.