## YANCY v. STATE.

### Opinion delivered October 11, 1915.

1. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—In a prosecution for homicide an instruction given by the court that if defendant provoked or voluntarily entered into the difficulty with deceased, then he cannot plead self-defense in justification of his acts; in other words, that if the defendant was the aggressor, or if he voluntarily entered into the difficulty, that he cannot then plead self-defense, *held*, to state the law and to have been justified under the facts in the case.

2. TRIAL—REMARKS OF PROSECUTING ATTORNEY—HOMICIDE TRIAL.—In a prosecution for homicide, in argument the prosecuting attorney said, "No doubt, when this young man reached home after committing this murder he was given a check by his father and was advised by him that other climes would be more healthful for him," *held*, the remarks were not prejudicial as they reflected the facts proved in the evidence.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Andrews & Burke,* for appellant.

1. The court's instruction on the plea of self-defense was erroneous and prejudicial, because the evidence did not warrant giving the instruction. The evidence as offered by the State did not show that the defendant was the aggressor, or that he provoked the difficulty, but on the other hand, that he, in good faith, tried to avoid it. The instruction as given was not applicable to the facts, and was misleading. 99 Ark. 462-474; 62 Ark. 306, 307; 95 Ark. 428, 430, 432; 73 Ark. 399, 406.

It was erroneous in that it singled out one circumstance of the case without reference to the other facts and circumstances of the case. 95 Ark. 49, 60; 77 Ark. 418; 93 Ark. 316.

The instruction was further erroneous in that it was contradictory of and in conflict with another instruction, given at defendant's request, defining his rights under the plea of self-defense. The law is well settled that the giving of an erroneous instruction is not cured by giving a correct instruction on the same subject where there is nothing to show which the jury followed. 85 Ark. 48, 52. And inconsistent and contradictory instructions are always misleading and should never be given. 54 Ark. 588, 602; 55 Ark. 393, 397; 13 Ark. 360; 102 Ark. 627, 630; 89 Ark. 213, 217.

2. The language of the prosecuting attorney in his argument to the jury, to the effect that there was no doubt that when he (defendant) went home that night he was given a check by his father and told that other climes were more healtful for him, were made with the specific purpose of creating prejudice against the defendant. It was an inexcusable and prejudicial expression of opinion, and should have been excluded. 99 Ark. 558; 72 Ark. 461.

*Wallace Davis,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The record shows that there was a conflict in the evidence as to whether or not appellant was the aggressor, and this being true, the court had the right to submit the question to the jury under the instruction to which appellant objects. The instruction was fully justified by the proof and correctly states the law. 109 Ark. 378, 387; 110 Ark. 402, 413.

2. The argument of the prosecuting attorney was not improper. It was a mere expression of opinion on the weight of the evidence,—a comment on the credibility of appellant's testimony.

Hart, J. Clarke Yancy was indicted for murder in the first degree charged to have been committed by shooting Luther Surman. He was tried, was convicted of murder in the second degree and his punishment was fixed by the jury at imprisonment in the penitentiary for seven years. From the judgment of conviction he has duly prosecuted an appeal to this court. The facts are as follows:

On the 27th day of February, 1915, Clark Yancy shot Luther Surman at a dance at Trenton, in Phillips County, Arkansas. One shot entered just below the point of the shoulder blade and a little to the right side of it; and the other shot was lower down, just below the last rib. Surman died the day after the shooting as a result of his wounds.

The circumstances attending the shooting, as testified to by witnesses for the State, are that the defendant Clarke Yancy came into the dance-hall drunk, went into a room adjacent thereto, pulled out his pistol and either threw or dropped it on the floor. Luther Surman then came in and threw the defendant down on the floor. He then threw the cartridges out of the gun onto the floor and handed the pistol to some lady present. Then he let the defendant up and both of them went out of the room. A short time afterwards the defendant came to Surman in the dance-hall and demanded his pistol of him. Sur-

man denied having the pistol and the defendant precipitated a fight with him. Surman got him down and was on top of him and some of the defendant's friends then got on top of Surman. Other persons separated them and the defendant and his friends went out of the house. Surman became angry and finally followed them out with a chair in his hand raised over his head. Some of the witnesses for the State testified that Surman was going in the direction of the defendant and that the defendant snapped his pistol at him and that when the pistol snapped Surman turned and started away from him. They stated that the defendant kept on snapping his pistol and that after it snapped three times it began to fire, two bullets entering the body of Surman and resulting in his death.

Other witnesses for the State testified that when Surman came out of doors with the uplifted chair he did not go in the direction of the defendant but that when the defendant saw him come around the house with the chair, going away from him, he immediately began to snap his pistol and that after it snapped three times it fired twice, both bullets entering the body of Surman.

According to the testimony of the defendant and his witnesses, the defendant, when he first went into the room adjoining the dance hall, pulled his handkerchief out of his pocket and in doing so accidentally threw his pistol on the floor, that Surman then threw him down and took the pistol away from him; that a little later the defendant requested Surman to give the pistol back to him and that Surman then began a second fight. They testified that after they had been separated the second time the defendant left the house and, with some boys who had come to the dance with him, started home, and that Surman then followed him out of the house and was advancing on him with a chair and was attempting to strike him with the chair at the time he fired the fatal shots.

(1) At the request of the State the court gave the following instruction:

"If you find from the evidence in this case that the defendant provoked or voluntarily entered into this difficulty with the deceased, then he cannot plead self-defense in justification of his acts.. In other words, if you find from the evidence that the defendant was the aggressor, or that he voluntarily entered into the difficulty, then he can not plead self-defense."

It is contended by counsel for the defendant that the court committed a reversible error in giving this instruction on the ground that it was not justified by the facts. They contend further that the instruction was misleading on the ground that the court did not tell the jury that if they found from the evidence that the defendant in good faith sought to retire from the scene of the difficulty and that the deceased followed him out of the house and assaulted him, that he would have a right to kill deceased in his own defense.

According to the testimony of the State the defendant was the aggressor throughout the difficulty; and according to the testimony of the defendant and his witnesses the defendant had left the house to avoid further difficulty with the deceased and was followed out of the house by the deceased who attempted to strike the defendant with a chair; and the defendant then, in order to save his own life, shot the deceased.

The defendant's theory of the case was fully and fairly submitted to the jury in instructions prepared by his own counsel. The instruction as given by the court presented the State's theory of the case. It is not always practicable that a judge should attempt to so frame each paragraph of his charge to the jury as to make it cover all the elements of the evidence. If the defendant thought the instruction as given was misleading because it did not contain the qualification now insisted upon he should have made a specific objection to the instruction and have thus specifically called the court's attention to the defect in it. If he had done so the court, doubtless, would have added the qualification requested by him, for, as we have already seen, it covered the defendant's the-

ory of the case fully by instructions asked for by him. *Arnott* v. *State,* 109 Ark. 378; *Bruder* v. *State,* 110 Ark. 402.

(2)    It is next contended by counsel for the defendant that the judgment should be reversed because the prosecuting attorney in his closing argument to the jury used the following language:

"No doubt, when this young man reached home after committing this murder he was given a check by his father and was advised by him that other climes would be more healthful for him."

We do not think counsel are correct in their contention in regard to this language. The record shows that the defendant went home after his difficulty with the deceased, that he was given a check by his father which he cashed with a neighbor the next morning, that he did not say anything to the neighbor about having shot the deceased, and that he at once left the country. Under this state of the record the attorney for the State was justified in using the language in his argument to the jury.

We find no prejudicial error in the record and the judgment will be affirmed.