MILTON NELSON *v.* STATE OF ARKANSAS

5539                                                462 S. W. 2d 452

Opinion delivered January 25, 1971
[Rehearing denied February 15, 1971.]

*Brown, Compton, Prewett & Dickens,* for appellant.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Milton Nelson was convicted of voluntary manslaughter for the fatal shooting of Joe L. Robinson, Sr. Appellant admits the killing but asserts that the evidence clearly establishes a case of self-defense. Appellant also attacks the admissibility of certain testimony, alleges prejudicial remarks by the prosecuting attorney, and contends that the court erred in refusing one of appellant's instructions.

On the particular Saturday night in question there were three separate fights in quick succession in a settlement in El Dorado known as St. Louis. It appears that appellant interceded in an effort to stop the second fight, warning the participants to "cool it" because he thought it was about time for the police to drive through the area. Joe Robinson, Sr., (who was an onlooker at the fight) was said by several witnesses to have responded to appellant by warning him not to meddle in the fight. Following that remonstrance appellant started in the direction of his car. Most of the eyewitnesses testified that Joe Robinson followed appellant up the street. The two men engaged in a scuffle and Anton Robinson, son of Joe Robinson, attempted to come to the aid of his father. Some witnesses said Anton had a brick in his hand. Appellant shot Anton and he fell unconscious; then appellant shot Joe Robinson at close range, the bullet entering the body at a point just under the left shirt pocket. When the officers found the gun it was under a nearby hedge covered by grass and leaves.

Appellant testified that at the scene of the second fight he made a remark "that we should not be fighting each other, that we should be fighting for the betterment of our community." Thereupon, he said, Robinson pushed appellant backward; that a friend of appellant suggested that they go home; and that the two headed west up Liberty Street toward appellant's car. Before reaching his car, appellant said he heard a commotion back of him and turned to find that Joe Robinson was charging him. "He got my left hand. When he caught

my hand I tried to break his grip but I couldn't. I wasn't successful, and I kept struggling and all the time he was holding he was getting closer, you know, so I fired. I fired in the air because I didn't really want to shoot him, so I fired in the air. . . . But he didn't stop. He didn't turn me loose or anything, so by this time he had gotten me by my elbows, and I was—I guess I was just totally overwhelmed by fear, so the next shot, I just fired and hit him. . . . He kept on struggling. And at this time, his son Anton was approaching, coming up behind his father, and just as I looked up, he . . . was about five feet or less, and so he was going to throw the bricks, so I shot again and the bullet struck Anton." Appellant saw nothing in Joe Robinson's hands; in fact no witness testified that Robinson was ever seen with a weapon that night.

Several of the State's witnesses corroborated appellant's assertion that Robinson was the aggressor. There was also evidence that Robinson was at times a belligerent person and appellant testified he knew that reputation. Those factors weighed in favor of appellant's plea of self-defense. But they are not sufficient within themselves to sustain the plea. Appellant was required to use all reasonable means within his power and consistent with his safety to avoid the killing. *Peters* v. *State*, 245 Ark. 9, 430 S. W. 2d 856 (1968). It must also reasonably appear to an accused that he is in immediate danger of losing his life or receiving great bodily injury. Whether this appellant conformed to those basic requirements was of course a jury question. At least two of appellant's friends were with him and by their actions showed their willingness to help. Appellant was a well-built young man of the age of twenty-one years. Unquestionably, Robinson was much older because the record shows he had two grown sons. Of all the fightings and scuffling which took place in St. Louis that night. only those men who were shot by appellant appear to have been hurt. If any person other than appellant wielded a gun that night, it is not shown in the record. Appellant admittedly took the gun from the glove compartment when he parked and concealed it "in the crevice of my

back, in my belt." There was no evidence that Robinson had a weapon of any kind. The recited circumstances are not in harmony with a self-defense plea and were sufficient to justify the jury in rejecting the plea.

One, and possibly two, of the State's witnesses quoted appellant as saying, at the time he tried to stop the second fight, "what's the use of all these black people out here fighting black people, while the white man is the one that's doing us wrong, so why don't we find a quarrel against them." Appellant contends that the recited testimony was calculated to inflame the minds of the jury and of course to his prejudice. In the first place, the witnesses had a right to recite their version of what was seen and heard by them. The appellant was privileged to, and did, deny having made the statement. In the second place, no objection was made at the time the testimony was offered.

In the third point for reversal it is charged that the prosecuting attorney, in his closing argument, made numerous references to appellant's alleged assertion that "you should be fighting the whites instead of each other." Appellant contends that the remarks were calculated to evoke racial prejudice and thereby make a fair trial an impossibility. No such remarks are found in the record before us and we cannot consider the point.

Finally, we are asked to reverse because of the trial court's refusal to give appellant's instruction number eleven. The instruction is so phrased as to hardly be understandable to a jury of laymen; moreover, the subject matter was appropriately covered in the court's instructions twelve and thirteen.

Affirmed.