Douglas Wayne BURTON *v.* STATE of Arkansas

CR 73-35                    495 S.W. 2d 841

Opinion delivered June 11, 1973

*John P. Corn,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *James W. Atkins,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Douglas Wayne Burton was convicted of voluntary manslaughter of Bobby Dale Johnson. He asserts two points for reversal, but both are based upon a contention that the evidence was insufficient to sustain the conviction. We find it to be sufficient and affirm the judgment.

Burton was tried upon a charge of second degree murder, which, on the eve of trial, was reduced from a first degree murder accusation. During the trial the court directed a verdict of not guilty on the second degree charge, but submitted the case to the jury on the lesser included offense of voluntary manslaughter. The killing took place at the Frontier Bar about 5:00 p.m. on Saturday afternoon, April 13, 1972. Burton and Johnson were intimate acquaintances. There was evidence tending to show that they competed for the favors of one Jackie Hopson, the older sister of Johnson's wife, and that Jackie, after having become pregnant by Burton, accompanied him to Texas, but returned to Little Rock with Johnson after about two weeks. There was also testimony that Johnson had, shortly before the fateful events of Saturday, April 13, made threatening remarks about Burton and that some of these were communicated to Burton.

During Saturday morning both Burton and Johnson had been at the Terminal Cafe, drinking and enjoying the society of friends. Burton and his friends left to pursue their weekend recreation elsewhere, and Johnson and Larry Patterson, a convicted felon and mutual friend and acquaintance of the parties, went next door to the Frontier Bar when it opened about noon in further pursuit of their day's pastime of drinking and associated pleasure. An autopsy revealed that Johnson's blood alchol content was more than twice as high as that required as a minimum basis for a presumption that an automobile driver is under the influence of intoxicating liquors. See Ark. Stat. Ann. § 75-1031.1 (Repl. 1957). The physician who performed the autopsy expressed the opinion that Johnson was "quite high" and that the alcohol content was such as to impair his judgment and slow his reflexes.

According to Patterson's testimony, Burton had summoned Johnson to the table where Burton was seated in the Terminal Cafe, after they had been exchanging baleful stares, where the two talked and then went outside, but returned after a few minutes, when Burton sat at the table he had left and Johnson commenced playing the pinball machine Patterson had been playing while Johnson and Burton talked. Later in the afternoon Burton and his companions entered the Frontier Bar and sat down in a booth near the front door where Sally Richardson was seated. After a few minutes Ms. Richardson pointed and snapped a pistol at Burton, who slapped her vigorously and disarmed her. Ms. Richardson promptly re-armed herself with another pistol she took from her purse with the announcement that it would fire.

There was testimony that, when Burton entered the Frontier, Johnson had reclaimed his pistol from Larry Patterson, to whom he had entrusted it upon arrival at the Frontier, and remarked that "he is loaded for bear," and "I think it's fixin' to come down." Patterson said that he and Johnson then discontinued their pool game at the rear of the bar and seated themselves about the middle of the bar, approximately 20 feet from the booth occupied by Burton and Ms. Richardson. Patterson also

related that, as he passed Burton, the latter said, "I wish one of them punks would say something to me like that," but denied that he was speaking to Patterson. After Burton had disarmed Ms. Richardson, Johnson made some remark indicating that her fate would have been much worse had she pointed her weapon at him rather than Burton, and made a boast of the effectiveness of a weapon fired by him. There was testimony that Johnson's statement was a response to a tearful inquiry by Ms. Richardson as to why he did not help her. Immediately thereafter, Johnson demonstrated by firing a shot from his pistol which struck the ceiling at a point high over the head of Ms. Richardson. This provoked an inquiry from Burton as to whether "that went for him" and thereafter he arose, drew a pistol from his pocket and commenced firing at Johnson, who fell, wounded and challenged Burton to shoot his best shot, because he (Johnson) was hit. Patterson testified that Johnson had returned his pistol to his pocket after firing at the ceiling.

The testimony of witnesses who were not directly involved in the encounter as to what happened after the shooting started lends little to our ability to reconstruct a total picture of ensuing events, largely because an immediate general exodus from the vicinity took place with most of the patrons of the bar rushing to a bathroom, where they were deprived of the sanctuary they sought because the first fugitive to arrive there had thoughtlessly locked the door. At any rate, after a lull in the shooting and the verbal exchange between Burton and Johnson, additional shots were fired, and Burton was seen backing out the front door, pointing two pistols toward the interior. One witness testified that Burton looked back in the door and inquired about the whereabouts of that "so and so." Johnson's wife, who was seated in a car outside, said that Burton fired two shots back into the interior of the Frontier, before running away. One witness said that at the time of Burton's exit Johnson was "crunched" behind a booth. He was found unconscious in a pool of blood on the floor as a result of wounds inflicted by bullets fired from a revolver. Johnson was taken to Baptist Medical Center, and was

pronounced dead upon arrival. The examining physician found a bullet wound in Johnson's left chest and two in his arm. A later autopsy revealed that the fatal wound penetrated the heart and was inflicted by a bullet from a small-caliber weapon, probably a .22. The entrance wound was in the left chest. Another wound from a larger caliber pistol was found to have resulted from a bullet which struck the outside of Johnson's left arm and passed through the arm, striking but not entering the chest cavity.

There was testimony that Burton had spent the night at Johnson's home, at Johnson's invitation after the date of the alleged threats. Witnesses who were said to have been present at the time of these supposed threats denied that they were made. This and other testimony tended to contradict some of that outlined above, but the foregoing resume is, as required, based upon testimony viewed in the light most favorable to the state.

Manslaughter is the unlawful killing of a human being without malice, express or implied, and without deliberation. Ark. Stat. Ann. § 41-2207 (Repl. 1964). Voluntary manslaughter must be voluntary, upon a suden heat of passion, caused by a provocation, apparently sufficient to make the passion irresistible. Ark. Stat. Ann. § 41-2208 (Repl. 1964). Intent to kill is not a necessary ingredient of the crime. *Seabourn* v. *State,* 236 Ark. 175, 365 S.W. 2d 133. The jury may have found that Burton killed Johnson upon a sudden and irresistible passion provoked by Johnson's firing a pistol into the ceiling above the booth where Burton was seated.

Appellant's principal argument is bottomed upon his contention that the killing was in self-defense. There was evidence which might have sustained this plea. Still, Burton would be guilty of manslaughter, even though he shot and killed Johnson under the belief that Johnson was about to assault him, if he acted too hastily and without due care, even though the evidence was insufficient to show irresistible passion or provocation. *Bruder* v. *State,* 110 Ark. 402 161 S.W. 1067; *Brooks* v. *State,* 85 Ark. 376, 108 S.W. 205; *Allison* v.

*State,* 74 Ark. 444, 86 S.W. 409; *Carter* v. *State,* 108 Ark. 124, 156 S.W. 443. One who claims self-defense must show not only that the person killed was the aggressor, but that the accused used all reasonable means within his power and consistent with his safety to avoid the killing. *Nelson* v. *State,* 249 Ark. 852, 462 S.W. 2d 452. If, in that respect, he acted hastily and without due care, the killing was manslaughter. *Peters* v. *State,* 245 Ark. 9, 430 S.W. 2d 856.

Appellant's pleading self-defense placed the issue of manslaughter before the jury. *Ellis* v. *State,* 234 Ark. 1072, 356 S.W. 2d 426. It is true that the evidence may require that the jury be instructed on both voluntary and involuntary manslaughter. See *Ringer* v. *State,* 74 Ark. 262, 85 S.W. 410. Here the court instructed the jury on both degrees of manslaughter, and submitted forms of verdict which permitted a finding of guilt of either degree or an acquittal. The jury verdict is conclusive of the matter.

Furthermore, we think the evidence to have been sufficient to have justified a conviction of a higher degree of homicide. There was certainly evidence of malice between the parties. If the jury believed that Burton armed himself and went to the Frontier Bar in anticipation that Johnson would be there and would attack him, or by acts and demonstrations provoked an attack upon himself by Johnson, with the intent of killing Johnson, or that Burton voluntarily entered into a contest or duel with Johnson, he would be guilty of first degree murder. *Caughron* v. *State,* 99 Ark. 462, 139 S.W. 315; *Ford* v. *State,* 96 Ark. 582, 132 S.W. 995; *Yancey* v. *State,* 120 Ark. 350, 179 S.W. 352. If such were the circumstances, the homicide would not be justified in self-defense unless Burton had done everything within his power consistent with his safety to avoid the danger and avert the necessity of the killing. *Valentine* v. *State,* 108 Ark. 594, 159 S.W. 26. We cannot agree with appellant's argument that the evidence requires acquittal because he attempted to terminate the combat during the brief lull in the shooting, but that Johnson's threats prevented him from doing so. Even if this evidence pre-

sented a fact question, the jury verdict resolved the matter. Since the evidence would have sustained a conviction of a higher degree of homicide, appellant is in no position to complain of his conviction of voluntary manslaughter. *McPeace* v. *State,* 249 Ark. 832, 462 S.W. 2d 212; *Patrick* v. *State,* 245 Ark. 923, 436 S.W. 2d 275.

Appellant suggests that the state's evidence fails to show that he killed Johnson or that Johnson did not kill himself. There is no evidence that anyone other than Burton and Johnson fired any shots at all. Ms. Richardson was the only other person shown to have a weapon in her possession and there was testimony that when the shooting started she was one of the crowd rushing to the bathroom. Ms. Richardson said that the first shot fired by Johnson over her head caused her speedy departure. Johnson's only weapon contained five spent shells and one unspent. Four bullet holes appeared in the wall below the ceiling into which Johnson first fired. One witness described them as descending in a sort of row. There was testimony that Burton fired two weapons, one of which was that he took from Sally Richardson, and his firing was directed toward Johnson, who was wounded by bullets of two different calibers. There was no indication of any suicidal attempt by Johnson, and the natural presumption against suicide is very strong. The evidence was certainly sufficient to pose a question for the jury as to the corpus delicti. See *Hays* v. *State,* 230 Ark. 731, 324 S.W. 2d 520. It would be sheer speculation to say that Johnson suffered death at his own hands or those of anyone other than Burton.

The judgment is affirmed.