M. P. HATHCOCK *v* STATE of Arkansas

CR 74-41                           510 S.W. 2d 276

Opinion delivered June 10, 1974

*Giles Dearing,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert S. Moore, Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, M. P. Hathcock, was charged with first degree murder, the victim

being Hugh Robinson, Jr. The alleged offense occurred on May 3, 1973, and the trial was conducted on September 12, 1973. The jury returned a verdict of voluntary manslaughter and Hathcock was sentenced to six years confinement in the Arkansas Department of Correction. From the judgment so entered, appellant brings this appeal. For reversal, appellant lists six asserted errors which we proceed to discuss.

It is first alleged that the opening statement to the jury by the prosecuting attorney did not set forth facts sufficient to constitute a crime committed by appellant, but constituted only a subtle injection of irrelevant facts creating prejudice against appellant. The opening statement of the prosecuting attorney appears in the record and we do not agree with appellant's contention. Be that as it may, no objection was made to anything said and the point accordingly, even if it contained merit, could not be considered as prejudicial error.

It is next asserted that the verdict is contrary to the evidence, which is another way of saying that no substantial evidence was offered to support the verdict. We disagree. The proof reflected that Robinson operated a little repair shop, repairing such items as radios, lawnmowers, washing machines, etc. On the date in question, James Cole, who lived in the neighborhood, testified that he saw Robinson and Hathcock talking in front of Robinson's shop building. He said they were talking about a lawnmower, Robinson telling Hathcock that he had put a new crankshaft and parts on the lawnmower and that Hathcock would not "get it" (the lawnmower) until he paid for the parts. He said he heard Robinson say, "You s-o-b kicked me" and went into his shop. The witness testified that Hathcock went right in behind him. Cole heard a "pop" and Hathcock came back out of the shop "with one hand in his pocket", walked on past Cole's house and got into his truck. Cole said that he kept watching for Robinson to come out, but the latter did not show up. The witness entered the shop, the first person to do so, and found Robinson lying "about middle-ways of the shop". Cole said that Robinson was "gagging like something choking him inside";[1] that he had a wound on his lip as though something had passed through it; his mouth was cracked and two of his

[1]The coroner's report stated that death was due to asphyxiation secondary to aspiration of blood due to the gunshot wound as described.

teeth were knocked out. While he was there, an officer arrived and subsequently an ambulance came. According to Cole, Robinson was lying on the floor facing the front of the building and had a screwdriver in his left hand. He said that Robinson had this screwdriver in his hand at the time he went into the shop building.

Gloria Richardson, who lived across the street from the Robinson home, testified that she saw Robinson and Hathcock in the yard by the workshop, but could not hear them talking; she did observe them making gestures at each other. The witness said that she went home and was preparing a meal for her children when she heard a shot and saw Hathcock come out of the yeard and get into his truck. Other witnesses testified but none saw the shooting or elaborated on the facts already set out. Henry Williams, a deputy sheriff, testified that he received a radio report of the shooting and, together with Trooper John West, went to the Hathcock residence. When Mrs. Hathcock admitted the officers, Williams observed appellany laying a pistol on the table. The pistol was loaded with four rounds and one spent round in the chamber. Hathcock said, "That is the gun I used." The officer then arrested appellant and placed him in the car, at which time Hathcock started talking about the shooting. Hathcock said that Robinson frequently tried to start trouble with him, "Every time I drove down the road that s-o-b tried to start trouble with me." The officer said that Hathcock also stated "He come at me with an ice pick", but that before the car reached the courthouse, Hathcock "had changed the ice pick to a screwdriver. He said, 'I shot the s-o-b because he gave me a lot of trouble.'" The officer said that he asked Hathcock no questions and that appellant was talking of his own accord.[2]

Hathcock, 61 years of age, testified that he operated a trading post at his residence and that he had known Robinson about eight years; that on the day of the shooting, a pistol was returned to him from a man named Lonnie Tucker to whom Hathcock had a few days earlier sold the pistol. Tucker told appellant the pistol would not fire and Hathcock

---

[2] There is no contention for reversal based on Hathcock's statements to the officer in the car relative to the fact that he was not warned of his constitutional rights at that time. See *Miranda v. Arizona*, 384 U.S. 436 (1966).

let him have another one in exchange for it, but said that he (Hathcock) took the pistol returned by Tucker with him— "going to take it with me to the ditch and try to shoot it, and if it would not, ship it back to the west coast where it come from." He said that he went to see a woman customer to collect, it being the third day of the month and she would have her Social Security check. He drove in his truck to the customer's home, and after stopping there, started out to the ditch, but Robinson flagged him down. They then discussed some articles (lawnmowers and radios) which Robinson had apparently purchased from Hathcock, and according to appellant, he went into the building at the invitation of Robinson. The latter told him that he had paid too much to Hathcock for the radio and appellant said, "I've got to go. I am in a hurry." He said that he took a couple of steps and heard Robinson say, "I have been wanting to do this for a long time"; Robinson pushed him into the wall, had a screwdriver in his hand and stated, "I am going to kill you." Hathcock said, "He started down, and that is when I pulled the gun and fired one time." From the evidence, the jury could have found that heated words were spoken by Robinson to appellant, but that Robinson walked away from Hathcock and went into his shop, appellant, armed with a pistol, immediately following; jury members could well have considered that only a short period of time elapsed (according to Cole, about 10 seconds) before the shot was fired and that there was insufficient time for the conversations detailed by appellant to have occurred before the shooting; i.e., appellant, angered by the conversation outside the shop, went immediately into the building and fired the shot. There was also testimony by the State that there were two exits to the shop, indicating that appellant could have retreated from any alleged assault, and also evidence that the parties were farther away from each other than stated by Hathcock. The jury is the fact-finder. It heard, and saw, the witnesses testify and it was the unquestioned prerogative of this body to determine exactly what happened. The jury could even have found circumstances such as existed in *Bruder* v. *State,* 110 Ark. 402, 161 S.W. 1067, where we said:

> "This court has held that where a jury believes that the defendant shot under the belief that he was about to be

assaulted, but that he acted too hastily and without due care, and was therefore not justified in taking life under the circumstances, he is guilty of manslaughter."

We conclude that the evidence was sufficient to support the conviction for manslaughter.

Under his third point, *viz,* that the verdict was against the law, appellant devotes only one paragraph. Under the statutory definition of manslaughter, Ark. Stat. Ann. § 41-2207 (Repl. 1964) and voluntary manslaughter, Ark. Stat. Ann. § 41-2208, the evidence was substantial to support the conviction. See also *Bruder* v. *State, supra,* and *Burton* v. *State,* 254 Ark. 673, 495 S.W. 2d 841.

It is alleged that the court erred in permitting a tape taken in the office of the sheriff while appellant was in custody, to be read in evidence. The purpose of playing the tape was to show that appellant had previously made statements inconsistent with the testimony he rendered on trial. It is asserted only that error was committed because the sheriff did not advise Hathcock that he had the right to have his attorney present when the tape was made. There is no contention that the tape constituted a confession and the State argues that the purpose in offering same was limited to an attack upon appellant's credibility since the version of his participation in the killing of Robinson was favorable to himself. At any rate, we cannot consider the contention since no objection was made at any time to the playing of the tape.

It is contended that the court erred in permitting certain pictures to be shown to the jury over appellant's objection. The photographer identified seven photographs that he had taken and the State offered these as exhibits. Appellant objected and after a conference between court and counsel out of hearing of the jury, and which was not taken by the reporter, the court announced that it was going to admit five of the photographs into evidence, and that it was withdrawing two photographs which would not be admitted. Counsel for appellant was then asked, "Any objection to those five?", to which counsel answered, "No - sir." In the argument, appellant states that all seven of the pictures were seen and

carefully examined by the jury before the court asked to see them, but there is nothing in the record to indicate that this happened. We, of course, determine these questions on the basis of the record, which here only reflects that there was no objection to the pictures which were admitted into evidence. No further discussion is therefore necessary, but it might be stated that we have held on numerous occasions that the admission of photographs of a deceased rests in the sound discretion of the trial court, and, of course, we do not reverse unless it is shown that such court abused its discretion. *Stanley* v. *State*, 248 Ark. 787, 454 S.W. 2d 72, and cases cited therein. Certainly, after viewing the exhibits complained about, we could not say that the trial court abused its discretion.

Finally, it is urged that the court erred in refusing to declare a mistrial because of the prosecuting attorney's questions to appellant relative to his business deals with the public in general, appellant asserting that such questions constituted an attack upon appellant's reputation. We find no merit in this contention. Hathcock took the stand and was asked on direct examination what business he was engaged in. He replied that he operated a trading post "as a hobby", gave the location, and stated that he also lived there. He was then asked if he had known Robinson and if he had business relations with Robinson in the past. Appellant answered that he had known Robinson for around 8 years and that their business relationship had been pleasant, "He was probably on my books most of the time in that 8 years."

On cross-examination, the prosecutor asked if Hathcock sold T-V's and radios and the witness also mentioned other items and "what have you." He was then asked if the bulk of his business was with black people, to which question he answered in the negative. Counsel objected that the prosecuting attorney had no right to interrogate about business transactions and that such would be an attack upon appellant's reputation. The State responded that the questioning had been opened up by the defense in asking Hathcock the business he was engaged in, and the court permitted the cross-examination to proceed. He was asked if he loaned money at 25%, to which Hathcock replied, "That is a false statement somebody is rumoring around." Counsel for appellant again objected and likewise objected to the ques-

tion as to whether Hathcock bought used property for the purpose of reselling it. Counsel for appellant asked to make a record out of the presence of the jury and this request was granted. It was contended that the questions had nothing to do with the charge, and were asked for the purpose of prejudicing the jury. A mistrial was requested, but the court stated that it would permit questioning of the witness as to business relationships and dealings with the deceased, but would not permit the prosecuting attorney to explore business relationships with regard to other matters not related to the particular matter before the court; that the cross-examination would be restricted to only those matters that would touch on the credibility of the witness and it would not permit any evidence relative to the reputation of the defendant. With regard to the public generally, the objection would be sustained. This ruling apparently satisfied counsel for appellant, for he stated, "May I clarify this? The defense has no objection to the State exploring any of his business relationships with the deceased. We object only with his business generally." The court then replied, "With regard to the public generally, the objection will be sustained." As stated, there was no further motion for mistrial nor objection to this phase of the questioning.

Let it first be said that this court has consistently permitted a wide scope of inquiry through cross-examination, and in *Vaughn v. State,* 252 Ark. 260, 478 S.W. 2d 759, we pointed out that "It is proper to cross-examine a witness about his 'residence, habits, antecedents and associations.'" The defense did open up the matter in asking what type of business Hathcock was engaged in, and in fact, testimony of Hathcock himself indicated business disagreements.[3]

---

[3]Hathcock had apparently sold some lawnmowers and a radio to Robinson, these items being in Robinson's shop at the time the two men went into the building. From the testimony of Hathcock relative to what happened after they walked into the Robinson shop:

"A. He [Robinson] said 'How much do you want for that lawnmower?' I said 'That one $10.00'. He said 'How much for that one?' And I said 'That is still $10.00', and he said 'How much do you want for that one over there?', and I said '$10.00 apiece.' That is all I said. He said 'I put a new crankshaft in this one over here.' I said I would make that good if I had to. ***

A. He said 'How much do you want for this radio?' I said '$10.00'. He said 'That is too much.'

Q. What reply if any, did you make?

A. I said 'If you think that is too much, I will be glad to take them back because you haven't paid for them. I will be glad to get them off the book.' "

As previously stated, the court sustained counsel's objection to questions which counsel contended related to reputation, and he was apparently satisfied. Of course, the granting of a mistrial is an extraordinary action and this motion should only be granted where it is obvious that any possible prejudice cannot be removed by an admonition. No admonition was here requested. In *Martin v. Lansley,* 252 Ark. 121, 477 S.W. 2d 473, a motion for mistrial was made which was denied by the trial court. We affirmed the judgment, stating:

> "The record shows that a number of appellee's records were lost in the fire. Appellee gathered up what he could. Immediately preceding the objection above appellee had stated that he did not review his invoices he found but merely turned them over to his lawyer. Admittedly the trial court has wide discretion in determining action appropriate to eliminate prejudicial effects of remarks of counsel and will not be reversed except for a manifest abuse thereof. [Citing case]. From the record here presented, we cannot say that the trial court erred in refusing the motion for mistrial."

It seems apparent that the questions asked at the outset by the prosecutor did not produce any passion or prejudice on the part of the jury for here was a defendant, charged with first degree murder, wherein he would have, upon conviction, been sentenced to life imprisonment, or upon a conviction of second degree murder, could have been sentenced to 21 years imprisonment. The jury, however, apparently accepted his version of why he had the pistol with him on the occasion of Robinson's death, and found him guilty only of manslaughter.

We find no reversible error.

Affirmed.

FOGLEMAN, J., not participating.