St. Louis, Iron Mountain & Southern Railway Company
v. Oliver.

Opinion delivered December 6, 1909.

1. Carriers—duty to furnish vestibuled trains.—While a railroad
company is not required to provide vestibuled trains, yet when it
provides them it must maintain them in a safe condition. (Page 434.)

2. Same—degree of care.—The degree of care that is required of a
carrier in furnishing sound and safe appliances in its vestibuled
trains and seeing to it that those appliances are kept at all times
safe and sound, while its trains are carrying passengers is not one
of ordinary care, but of the utmost diligence which human skill and
foresight can effect; and if injury occurs by reason of the slightest
omission in regard to the highest perfection of all the appliances of
transportation or the mode of management at the time the damage
occurs, the railroad company is responsible. (Page 434.)

3. Same—duty as to vestibuled trains.—It is the duty of the train-
men not only to close the trapdoors in a vestibuled train between
stations, but to exercise the highest care to see that they are kept
closed. (Page 435.)

4. Same—right of passenger to pass between cars.—It is not negli-
gence for a passenger to pass from one car to another in a vesti-
buled train while the train is in motion, as he has a right to assume
that it is safe to do so, and that all appliances are in order and in
proper position. (Page 436.)

5. Same—instruction as to damages—when harmless.—An instruc-
tion in a personal injury case that the plaintiff was entitled to recover
for loss of time caused by the injury was not prejudicial, though
there was no proof upon which to base any damage for loss of time,
if the extent of the physical pain which he suffered and the injury
which he received and the amount of his physician's account were
sufficient to justify a much larger verdict than he recovered. (Page
436.)

Appeal from Hot Springs Circuit Court; *W. H. Evans,*
Judge; affirmed.

*Kinsworthy & Rhoton, Bridges, Wooldridge & Gantt,* and
*Jas. H. Stevenson,* for appellant.

There was no negligence shown on the part of appellant;
therefore the case should not have been submitted to the jury.
4 Elliott on Railroads, § 1589a; 76 Fed. 734; 96 Minn. 434; 118
Mo. App. 239; 94 S. W. 293. When the facts are undisputed,
and only one inference can be drawn from them, negligence
is a question of law for the court. 84 Pac. 1026; 44 Kans. 586;

69 Ark. 562. The fact that the trap door was open was not, of itself, proof of negligence on the part of appellant. 84 Pac. 1124.

*M. S. Cobb,* for appellee.

Passengers have a right to assume that vestibuled cars are safe and will be prudently managed. 2 L. R. A. (N. S.) 645; 76 Fed. 734; 116 Fed. 324. The doctor's bill not having been paid, it was proper for the jury to determine, from their common experience, what the services would be worth. 112 S. W. 876. Carriers by steam railway are required to use more than ordinary care for the safety of their passengers. Thomp. Neg., vol. 3, p. 191; 57 Ark. 418; 55 S. W. 270; 60 Ark. 550; 59 Ark. 180; 34 Ark. 613.

FRAUENTHAL, J. On the night of December 13, 1907, O. D. Oliver, the plaintiff below, secured passage on one of defendant's passenger trains from Malvern to Benton. While passing out of the chair car to the smoker ahead, he fell in an open trap door in the vestibule between the cars, and was severely injured. The cars of the trains were vestibuled; that is, they were provided with outer doors at each side of the coach platforms and with trap doors over the steps. When the train was in motion, these outer vestibule doors would be closed, and the trap doors closed down so as to cover the steps at the end of the coaches, and thus make a solid platform between the cars. The testimony on the part of the plaintiff tended to prove that when he entered the train of the defendant at Malvern he went into the chair car and in a short time thereafter he proceeded to go from that car to the smoking car. As he passed out of the chair car on to the platform between the cars, he met a gentleman starting to go into the chair car, and he stepped slightly to the side to permit the party to pass, and fell down the steps in the vestibule. The trap door was not down over these steps, and it was dark in this passageway between the cars and in the vestibule. The train at the time of the injury had left Malvern and was running towards Benton. The rules and custom of the defendant required that, when such a vestibuled passenger train left a station, the servants of the defendant should close the vestibule doors and close down the trap doors over the steps. These trap doors had a catch on them to hold them se-

curely when thus closed, but they could be raised by any one. Several servants of the company testified that in the performance of their duties they passed over the platform between these two coaches after the train had left Malvern, and that all the trap doors between these coaches were down and over the steps when the train left Malvern. But their testimony indicated that they did not notice this trap door, where plaintiff was injured, either at the time of or just before or after the injury; and none of them testified that it was not in fact open at the time or just before or after the injury.

Upon a trial of the cause before a jury a verdict was returned in favor of the plaintiff for $500. The defendant prosecutes this appeal.

A common carrier of passengers is not under any legal obligation to provide upon its line of railroad vestibuled trains, although such trains are apparently safer than the others, and have come to be in general use. But when the carrier has provided vestibuled trains, it is his duty to maintain them in a safe condition. It then becomes the positive duty of the carrier in the operation of such trains to use the highest degree of care consistent with the practical operation and management thereof to see that every appliance connected therewith is kept in repair and in safe condition. The passenger has the right to assume that the vestibules provided are carefully managed, and that they are convenient and safe. The principles generally recognized as fundamental in the law of carriers of passengers are applicable to these new appliances. 2 Hutchinson on Carriers, § 927; *Bronson* v. *Oakes,* 76 Fed. 735; *Crandall* v. *Milwaukee, St. Paul & Sault Ste. Marie Ry. Co..* 96 Minn. 434; *Sanson* v. *Southern Ry. Co.,* 50 C. C. A. 53; *Northern Pac. Ry. Co.* v. *Adams,* 116 Fed. 324; 4 Elliott, Railroads, § 1589; *Chicago, Rock Island & Pacific Ry. Co.* v. *Simpson,* 87 Ark. 335.

The degree of care that is required of the carrier in furnishing sound and safe appliances in its vestibuled trains and seeing to it that those appliances are kept at all times safe and sound while its trains are carrying passengers is not one of ordinary care, but the carrier "is bound to the utmost diligence which human skill and foresight can effect; and if injury occurs by reason of the slightest omission in regard to the highest

perfection of all the appliances of transportation, or the mode of management at the time the damage occurs, the carrier is responsible." *George* v. *St. Louis, I. M. & S. Ry. Co.,* 34 Ark. 613.

In the case of the *Pennsylvania Company* v. *Roy,* 102 U. S. 451, Mr. Justice Harlan, in speaking of the degree of care that is required of the carrier, says: "He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger. Among the duties resting upon him is the important one of providing cars or vehicles adequate, that is, sufficiently secure as to strength and other requisites for the safe conveyance of passengers. That duty the law enforces with great strictness. For the slightest negligence or fault in this regard, from which injury results to the passenger, the carrier is liable in damages."

It is the duty of the carrier not only to provide vehicles which are thus safe, but he must use the same vigilance and care in keeping the appliance with which such vehicles are equipped in a safe and suitable condition. 2 Hutchinson, Carriers, § 911.

One of the chief objects of a vestibuled train is to furnish to the passenger a safe and convenient way of passage from one car to another; and in order for such passage way to be safe ordinary prudence demands that the trap doors should be over the steps. It was not only the duty of the servants of the defendant in this case to close these trap doors, but it was their further duty to exercise the highest care to see that they were kept in this condition. In the case of *Wagoner* v. *Wabash R. Co.,* 94 S. W. 295, the majority of the court says: "It is the opinion of the court that the railroad company is not only answerable for the negligent acts of its servants in opening the vestibule doors and permitting the same to remain after having been opened by them, but it is responsible as well for its failure to exercise a high degree of care, to the end that the same are closed and the vestibule reasonably safe for use, even though they are

opened by others than the defendant's servants." In this case it became a question for the jury to determine whether under the circumstances the defendant exercised that high degree of care and vigilance in closing and keeping closed the trap door over the steps. And there was some evidence to warrant the finding that such high degree of vigilance and care was not exercised by the servants of the defendant in charge of the train.

It was not a negligent act for the plaintiff to pass from one car to the other. He had a right to assume that it was safe to so pass, and that all appliances were in order and proper position. In the case of *Bronson* v. *Oakes,* 76 Fed. 735, Judge Caldwell said: "The presence of such an appliance on a train is a proclamation by the company to the passenger that it has provided a safe means of passage from one car to another and an invitation for him to use it as his convenience or necessity may require." *Robinson* v. *United States, etc., Society,* 132 Mich. 695.

All that was required of the plaintiff in going from the one car to the other was to exercise ordinary care and prudence. The foregoing presents our opinion relative to the rules of law that are applicable to the facts of this case. There were a number of instructions given by the court at the request of the plaintiff to which the defendant objected; and a number of instructions were given also at the request of the defendant, and some asked by it were refused over its objections. But the rulings of the court upon these instructions were in conformity with the above principles of law; and we therefore find no prejudicial error in any ruling of the court thereon.

In its instruction on the measure of damages the court included as an element of damages the loss of time of plaintiff caused by the injury. Counsel for appellant contend that there was no evidence as to the value or amount of the plaintiff's earning capacity, and therefore no testimony upon which to base any damage for the loss of this time. But the defendant did not make in the lower court any specific objection to this instruction, but only objected generally. In addition to this, the evidence showed that the plaintiff on account of the injury was confined to his bed and room for four weeks, that he had

regular employment which he was unable to attend to on account of the injury. For this loss of time he was entitled to nominal damages. The extent of the physical pain which he suffered and the injury which he received and the amount of his physician's account were sufficient to justify a much larger verdict than he recovered. We do not think, therefore, that any prejudicial error of which the defendant can now complain was committed by the court by giving this instruction.

Finding no prejudicial errors in this case, the judgment is affirmed.