PLATT *v.* OWENS.

Opinion delivered February 16, 1931.

*Jo M. Walker,* for appellant.

*A. M. Coates,* for appellee.

BUTLER, J. Appellee, plaintiff below, brought suit and recovered judgment for the breach of a contract of employment made for a period of one year.

It is conceded that the evidence was sufficient to establish the contract, which was one of employment for one year, and that the court, if there was liability under the evidence, correctly instructed the jury. The sole question is, was there substantial evidence to sustain the contention of appellee that he was wrongfully discharged?

Appellant was engaged in the business of making small short time loans, and appellee was employed as his local manager at Helena having general charge of the business there and of the collection of the loans and interest and the transmission of such collection to the appellant who lived in New Orleans, Louisiana. Appellee was discharged by P. A. Eyric, the general manager of appellant, on the 6th or 7th of January, 1930.

The only witnesses who testified as to the circumstances of the discharge and the reasons for it were the appellee on the one hand, and Eyric, the general manager, on the other. Appellee testified that he was discharged by Eyric on the 6th of January without any reason assigned other than that the business did not justify his further retention. He stated that at that time Eyric did not know that he was ''short'' and no such charge was made; that the last audit of the business was made about six months before and another audit was not made, or his shortage discovered, until he had been discharged by Eyric; that at that time he did not know whether he was short or not; that there were four others handling the cash, but he was in charge of the office and responsible for the amount, regardless of how it happened. In corroboration of the statement that his discharge was not because of any shortage, he introduced a letter written

shortly thereafter by the appellant to him and called particular attention to a part of same in which this statement was made:

"Whenever a new office is opened, it should pay back its investment in one year, and there is no man on this earth is going to stand for an office just to make enough each month to pay expenses and the owner does not realize a thing out of it for himself. You were given all the chance in the world to make a success of the office, and I was more than fair with you, and you could have worked for me for years, but the Helena office was falling each month, and I was forced to dismiss you as the office is opened two years now and you had a long enough chance to have made same pay for itself."

Appellee called attention to the fact that nowhere in the letter does the appellant charge him with a shortage or give that as the reason for his discharge. He also stated that, while appellant complained that the business was not a paying one, such was not the fact, but instead it was very profitable and had realized a large return on the investment.

Eyric, testifying for the appellant, stated that he had general supervision of the local managers and their business, including the appellee, whom he had hired as local manager for the Helena office; that in his supervision of the Helena office he observed that the appellee would take time off to go fishing and was gone a couple of times to Memphis, and that in October preceding the discharge of appellee in January, witness found that appellee was a little short, and that he told him that when he (Eyric) came back he wanted all of it; that he found that expenses were running up and remittances falling off; that only the appellee had access to the cash drawer and had a key to it; that he counted the cash in appellee's presence and found him short $77.44. He thereupon discharged appellee and gave him a week's salary, $40, which was credited on the shortage, appellee executing a note for the remainder and being then and there dis-

charged. This occurred on January 7 and not on the 6th as stated by appellee. On cross-examination, in answer to the question if the appellee had been returning to appellant and witness seventy-five to one hundred per cent. on the investment, "he would have been perfectly satisfactory and would have been there today," witness answered, "I suppose so." Witness introduced the note bearing date January 7, 1930, for $37.44 with the notation on one corner: "Shortage in checking out," and appellee, on being questioned regarding the notation, stated that that was what Eyric said it was for.

There was also introduced in evidence a letter from appellee to the appellant complaining of Eyric and blaming the loss of business to his interference and also accusing Eyric of not treating him fairly, but regretting that he was short $37.44 when he was checked out, and stating that if he had been "told sooner and give me a little notice, I could have checked out O. K."; and, "I don't want you to think I was trying to steal anything from you for I don't have to do that for a living. I was trying to pay for my car as I had told you some time ago. I didn't think about getting let out at all."

This is in substance the relevant evidence to the point in issue, and from it the appellee argues that an issue of fact was presented to the jury on conflicting testimony, the credibility and weight of which they were the exclusive judges. It is very true that there is a conflict in the testimony of the appellee and Eyric, either one of which the jury had a right to reject, but, with the testimony of Eyric eliminated, there remains evidence which is undisputed and which must be accepted and renders any statement of appellee to the contrary demonstrably false. It does not depend for its verity on the testimony of witnesses. If it did, then no matter how many in number they were or however plausible their statements, nevertheless they might be false, and, tested by the rules by which such testimony is weighed, rightly the jury might conclude that the appellee, interested as he was,

was the most worthy of belief, and that his single word outweighed them all. But here we have inanimate witnesses, the creation of appellee himself, that completely refute and discredit his statement, so much so that it approaches the realm of the morally impossible which may no more be disregarded than the physically impossible. Whether he was discharged on the sixth as he claims, or on the day following as stated by Eyric, on this later day he executed an instrument by the terms of which he agreed to pay a sum which he acknowledged was for money of his master which he had used in violation of his trust, and within a few days thereafter sought to excuse his dereliction and promised again to repay. To then accept a statement that when he was discharged his shortage was not known or mentioned to him does violence to every canon of reason or common sense. When evidence is adduced by human testimony, then the jury may weigh and assess, and, in determining where lies the truth, their judgment may not be disturbed, however slight a base it has whereon to rest, if there be a tangible one at all, or how much it might be thought they erred in their estimate of the truth. *Crump* v. *Stark,* 23 Ark. 131; *St. L. I. M. & S. R. Co.* v. *Wilson,* 70 Ark. 136, 66 S. W. 661, 91 Am. St. Rep. 74; *K. City Sou. Ry. Co.* v. *Biggs,* 181 Ark. 818, 28 S. W. (2d) 68. But there is a limit to the sanctity of a jury's verdict, and where its conclusion has no basis in substantial evidence, or where such evidence is demonstrably false, courts will reverse judgments based on such verdicts. *Waters Pierce Oil Co.* v. *Knisel,* 79 Ark. 608, 96 S. W. 342.

The validity of these rules has not been impaired by any subsequent decisions. *Texas Co.* v. *Jones,* 174 Ark. 905, 298 S. W. 342.

As we consider and construe the entire evidence, this case is brought within the scope of the rules heretofore stated, and necessitates the reversal of the judgment of the trial court and the remand of the cause for a new trial. It is so ordered.