ALLDREAD *v.* MILLS.

4-8050                                       199 S. W. 2d 571

Opinion delivered February 10, 1947.

*Y. W. Etheridge* and *Williamson & Williamson,* for appellant.

*C. T. Sims,* for appellee.

Ed F. McFaddin, Justice. This appeal stems from a motor vehicle collision. Appellee was plaintiff in the trial court, and was awarded a verdict and judgment for $4,000. From an unavailing motion for new trial, the appellant (defendant below) brings this appeal, urging here for reversal the six assignments herein listed and discussed. For convenience, we refer to the parties as they were styled in the trial court.

First Assignment: "The verdict and judgment are contrary to clearly established and uncontroverted physical facts in the case."

Shortly after dark on Saturday night, October 28, 1944, the plaintiff, George Mills, accompanied by his wife and two other persons, was driving his Ford sedan northerly towards Monticello, and the defendant's servant (Monroe Franklin) was driving defendant's 1½-ton Ford truck southerly from Monticello. The two vehicles collided on State Highway No. 81, and plaintiff received injuries and damages, the nature and extent of which will be mentioned in the discussion of Assignment No. 6. At the place where the collision occurred the road is practically straight, and a heavy black line indicates the cen-

ter of the road. The plaintiff was attempting to drive on the east side, and the defendant on the west side. The hard-surface highway is 18 feet and 4 inches wide.

Plaintiff's witnesses testified that the plaintiff was on the *east* side, and that the defendant's truck crossed the center line and caused the collision. The defendant's witnesses testified that the defendant's truck was on the *west* side, and that the plaintiff's car crossed the center line and caused the collision. The cars did not hit head-on; but the left front of each vehicle received the impact, and each vehicle continued some distance before coming to a stop. Plaintiff's car had the left front wheel and fender damaged, and the left front door crushed. From the collision point, the car angled to the west (left) side of the road before stopping in the ditch about 50 yards from the collision. The defendant's truck had the left front wheel torn from the axle, and knocked ''back up under'' the truck, with the front or running part of the wheel turned out. Also, there was damage to the body of the truck on the left side just back of the cab door. The truck traveled about 50 yards southwest from the collision. The back end skidded to the right, and the truck stopped with the rear end in the ditch on the west side of the highway. As the truck went down the highway, the rubber from the front wheels left skid marks on the pavement, which skid marks remained visible for several weeks.

It is conceded by the defendant that there is sufficient evidence to sustain the verdict of the jury if the physical facts be ignored, but it is most earnestly contended that three physical facts establish the defendant's case and necessitate reversal of the jury's verdict. Learned counsel for defendant invokes the rule that a verdict will be set aside, if it be against incontrovertible physical facts; and, in support of that rule, cites *St. L. S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, 185 S. W. 768; *Waters-Pierce Oil Co.* v. *Knisel,* 79 Ark. 608, 96 S. W. 342; *Platt* v. *Owens,* 183 Ark. 261, 35 S. W. 2d 358; *Magnolia Petroleum Co.* v. *Saunders,* 193 Ark. 1080, 104 S. W. 2d 1062; *Mo. Pac. R. Co.* v. *Hancock,* 195 Ark. 414,

113 S. W. 2d 489; and *Guardian Life Ins. Co.* v. *Waters,* 205 Ark. 87, 167 S. W. 2d 886. To these cases might well be added the following authorities: 3 Am. Juris. 451; 4 C. J. 861; 5 C. J. S. 631 and note, p. 640; 46 C. J. 183; and the annotation in 21 A. L. R. 141 on "Evidence contrary to scientific principles or laws of nature." Mr. Justice HART, in *St. L. S. W. Ry. Co.* v. *Ellenwood, supra,* stated the rule in this language:

"Appellate courts take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics. So where there are undisputed facts shown in the evidence, and by applying to them the well known laws of nature, of mathematics and the like, it is demonstrated beyond controversy that the verdict is based upon what is untrue and what cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict."

With this rule in mind, we proceed to examine the physical facts which defendant says (a) are incontrovertible; and (b) prove beyond controversy that the collision must have occurred on the west side of the center line of the highway. These physical facts are: (1) the skid marks on the pavement; (2) the condition of each vehicle after the collision; and (3) the final point of rest of each vehicle.

(1) *The skid marks.* As previously stated, definite skid marks were made on the pavement by the front wheels of the defendant's truck; and these marks began about ten inches *west* of the center line, and continued with the movement of the truck. Defendant argues that the collision happened where the skid marks began; and that, since the skid marks began on the *west* side of the center line, therefore, the defendant's driver as not on the east or wrong side of the road. But several witnesses testified that there was dirt caused by the collision on the east side of the center line; and that the truck tire skidded in the dirt for some distance before starting to make the rubber skid marks on the pavement. Also, witnesses testified that the rubber tires of the truck did not make the skid marks until the front wheels

became locked by being driven west across the center line. As typical of the plaintiff's evidence on this point, we quote a portion of the testimony of Dempsey Polk, city marshall of Monticello:

"Q. From the signs made from this on your investigation, tell the jury whether or not Mr. Mills' car was across the center line when the collision occurred, or whether or not the truck was on Mr. Mills' side when it occurred. A. The track made over here where this track started in the dirt, knocked off this car, was within six inches of the edge here and gradually went on across. . . . Q. Then the truck, according to your testimony, is bound to have hit this car on the east side of the center line of the highway? A. That's right."

It is thus made to appear that the plaintiff's witnesses claimed (a) that the skid marks began only after the wheels left the dirt, which had fallen from each vehicle at the point of collision; and (b) that the beginning of the rubber skid marks did not indicate the point of collision. If this evidence be true—and that was for the jury—the skid marks did not establish incontrovertible evidence as to the point of collision. The fixing of that point was still left to the evidence of witnesses. The jury took the plaintiff's version, and we cannot say that the jury's verdict was wrong as a matter of law.

(2) *The condition of each vehicle after the collision.* We have previously detailed the damage to each vehicle. Defendant submits that the marks of impact and the resulting physical conditions of the vehicles prove that the collision occurred west of the center line. But we cannot agree. The same marks of impact, and the same resulting physical conditions could have occurred, regardless of which side of the center line was the point of the collision.

(3) *The final point of rest of each vehicle.* Since the car and the truck both stopped in the ditch on the west side of the road, defendant argues that the car, being the lighter vehicle, must have been headed west before the collision, and merely "sideswiped" the truck.

This argument is reinforced by the fact that the left front headlight of the truck was not burning before the collision, and the plaintiff thought—until a moment before the collision—that it was the right front headlight of the truck that was not burning.

But we cannot say that the course traveled by the vehicles from the collision to the final point of rest furnishes "incontrovertible physical facts" that the collision occurred on the west side of the center line. The Missouri Court of Appeals, in *Lang* v. *Mo. Pac. R. Co.*, 115 Mo. App. 489, 91 S. W. 1012, uses this language, which expresses our views here:

"So frequently do unlooked-for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact, except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other."

Regarding the defendant's first assignment, about incontrovertible physical facts in this case, it is not for us to substitute our conclusions for those of the jury, unless the physical facts demonstrate beyond a doubt that the verdict was erroneous. We cannot so declare in this case. We take the view, so well expressed by the Missouri Court of Appeals in *Stokes* v. *Metropolitan St. R. Co.*, 173 Mo. App. 676, 160 S. W. 46:

"We are asked to reverse the judgment on the ground that plaintiff's version of her injury is so contrary to, physical law and so incredible that it should not be accorded any probative value. We would not be justified in treating as substantial that which has no substance, in committing the solecism of holding in effect that testimony might be true which common experience and common knowledge of physical laws would reject as palpably false; and should we find the evidence of plaintiff 'is so contrary to the daily experience of common life, so at war with the conceded physical facts,' as to be beyond reasonable belief, we would not hesitate to brush it aside as wholly valueless. . . . On the

other hand, it is our duty, as an appellate tribunal, to exercise great care and caution in applying the tests of common sense and common knowledge of physical law to a given state of facts. The testimony of unimpeached witnesses should not be lightly waved aside as impossible or incredible. Common experience and observation teach us that strange and astonishing things sometimes happen in the physical world, and it would not do to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses."

We adopt as our own the words of the Missouri Supreme Court in *Dempsey* v. *Horton,* 337 Mo. 379, 84 S. W. 2d 621:

"Only in those extraordinary cases, where deductions from physical laws and facts so clearly and irrefutably disprove the testimony of witnesses that reasonable minds may not entertain any other conclusion, are courts justified in ruling sworn testimony inherently unbelievable and impossible."

Second Assignment: "The court erred in permitting a hypothetical question which did not incorporate all the undisputed and essential facts."

The witness, Sweeny Copeland, was, at the time of the collision, a sergeant in the Arkansas State Police, and as such officer, made a personal investigation of the scene of the accident a few days after the collision. He was called as a witness by the defendant, and his evidence showed his keen perception of all marks, conditions, etc. In rebuttal, the plaintiff asked Copeland a hypothetical question, which did not incorporate all the undisputed and essential facts. But Copeland, in his answer, added to the question all these other undisputed and essential facts, when he said, in part:

". . . that, *with the other facts that I did find,* indicated, . . ." (Italics our own.)

Thus, the witness cured the defect in the question, because he added his own personally acquired knowledge

to the hypothetical facts. In *St. L. & S. F. R. Co.* v. *Fithian,* 106 Ark. 491, 155 S. W. 88, expert witnesses were asked hypothetical questions which did not include all the facts, but Mr. Justice Kirby, speaking for this court, said:

"It is also insisted that the court erred in permitting the expert witnesses to answer hypothetical questions relative to the proper construction of the main track upon the curve without taking into consideration the undisputed fact that a switch track led off from the main line at a different curvature near the bridge. . . . These experts, however, were not answering hypothetical questions which failed to include the switch track construction, but gave their opinions upon conditions that they found reflected and to exist at the time of the accident from an examination of the place thereof after the occurrence, and it cannot be said that they did not take into consideration the switch track as constructed since it was upon the ground at the time of their examination. It was proper to permit the expression of their opinions under the circumstances and appellant could have tested their knowledge of the existing conditions and discovered whether this fact was taken into consideration by them in forming their opinions if it had desired to do so, upon proper cross-examination. *Ringlehaupt* v. *Young,* 55 Ark. 133, 17 S. W. 10.''

To the same effect, see 20 Am. Juris. 665, *et seq.,* and the annotation in 82 A. L. R. 1338. We find no merit in defendant's second assignment.

Third Assignment: "The court erred in requiring Monroe Franklin to answer a question propounded to him relative to a conviction for carrying a pistol and disturbing the peace while drunk.''

Monroe Franklin was the defendant's servant who was driving the truck that was in the collision with the plaintiff's car. Franklin was called as a witness by the defendant, and on cross-examination was asked about the officers taking him to Monticello Sunday morning after the collision on Saturday night. The record reflects:

"Q. Do you remember what was said to you? A. Yes, sir. He asked me wasn't I drunk and I told him, 'No, sir.' . . . Q. Do you remember whether you replied to Mr. Polk, and said, 'No, sir, I wasn't drunk but I was drinking some?' Did you say that? A. No, sir. . . . Q. Isn't it true that you were convicted here in this court for carrying a pistol and disturbing the peace while drunk down here at Lacey a couple of years ago?

"The defendant objects to each question and answer of Monroe Franklin concerning his former conviction in circuit court for carrying a pistol, and so forth, and saves his exceptions.

"A. No, sir, I wasn't drunk. Q. Were you drinking a right smart? A. No, sir.

"By the Court: Ladies and gentlemen of the jury, you will not consider these questions and answers in any manner in determining the facts in this case except as going to the credibility of this witness' testimony."

After the court made the last-quoted ruling, there was no further objection by the defendant, and no subsequent exception saved to this or any subsequent ruling of the court in the interrogation of this witness. In other words, the court's ruling, in telling the jury to limit the evidence to credibility, was made in response to the defendant's objection. If the defendant was not satisfied with the sufficiency of the ruling, he should have asked for another and different ruling, and then excepted if he did not obtain the desired ruling. He failed to do either of these things. He acquiesced in, and accepted as sufficient and satisfactory, the ruling made by the court. So he is in no position to raise his third assignment. In *So. W. Tel. and Tel. Co.* v. *Abeles,* 94 Ark. 254, 126 S. W. 724, 140 Am. St. Rep. 115, 21 Ann. Cas. 1006, Mr. Justice HART, in passing on a somewhat similar situation, said:

" . . . counsel for appellant insists that the court erred in not excluding certain portions of Dr. Green's testimony, and in certain remarks made by the court when appellant's counsel made objections to the testimony. It is sufficient answer to this to say that no

exceptions were saved either to the ruling of the court on the evidence or to the remarks made in doing so. Under the well established rules of this court, if any errors were committed, they have been waived."

In *Meisenheimer* v. *State,* 73 Ark. 407, 84 S. W. 494, Chief Justice Hill said:

"No exception was taken to the ruling. An objection precedes an exception. The objection calls for a ruling by the trial court, and the exception directs attention to and fastens the objection for a review on appeal. If a party does not follow the ruling on his objection by clinching it with an exception, he waives the objection."

See, also, *Valentine* v. *State,* 108 Ark. 594, 159 S. W. 26; *Holmes* v. *State,* 153 Ark. 339, 240 S. W. 425. So, even if the questions asked the witness were beyond the proper range of cross-examination—which we do not decide—nevertheless, there was no exception to the court's ruling.

Fourth assignment: "The court erred in refusing to give instruction 'C' requested by appellant."

The gist of the requested instruction was, that if plaintiff was negligent in assuming that the one headlight burning on the defendant's car was the left light, when in fact it was the right light, then the plaintiff could not recover. We see no error in refusing this instruction. Defendant's instruction No. 1 told the jury that the plaintiff could not recover if he was guilty of negligence. And defendant's instruction No. 9 defined negligence. We think these instructions Nos. 1 and 9 sufficiently covered the negligence issue so as to make the requested instruction "C" unnecessary, even if it were otherwise correct.

Sixth assignment: "The verdict and judgment are excessive."

Before considering the fifth assignment, we will consider now this sixth one. The plaintiff sued for $21,365.69, but received a verdict for only $4,000. He showed itemized financial damages, as follows:

| | |
|---|---|
| Hospital and medical expenses | $  667.08 |
| Paid to repair damage to car | 165.69 |
| Loss of earnings between date of injury and trial | 1,162.50 |
| Total | $1,995.27 |

The above items covered monetary losses only. The plaintiff's arm was broken and otherwise injured. It was first set, and placed in a cast for 30 days; and then reset and placed in another cast for an additional 60 days. The plaintiff testified:

"Q. Tell the jury whether or not you suffered any pain and mental anguish from this injury?

"A. I suffered death for about two months."

Plaintiff also testified that he was still suffering at the time of the trial. In addition, the record reflects the following occurred in the plaintiff's testimony:

"Q. With reference to your working or doing the class of work that you did before you were injured, Mr. Mills, can you do that now, drive a tractor and do farm work and labor like you did before?

"A. No, sir.

"Q. Why can't you do that?

"A. I just haven't got but one hand to do it with.

"Q. I wish you would pull off your coat there and show the jury your hand and arm so they can see just what you do have.

"A. (Witness exhibits to jury his arm and hand).

"Q. Show the jury how much you can work your hand, and so forth.

"A. That is all I can work my hand (demonstrates).

"Q. In working on your arm was it necessary for the doctor to operate on it, cut into it or anything?

"A. Yes, sir.

"Q.  When was that done?

"A.  When I was first hurt, when I had the accident.

"Q.  That is the sunken places on the back there?

"A.  Yes, sir."

The jury thus observed not only the extent of the injury, but the condition of the plaintiff at the time of testifying, and also the degree of impairment of the arm. There are no photographs in the record, so we cannot say that the impairment was insufficient to justify some substantial award. Considering this impairment of the arm along with the pain and suffering and the monetary loss previously mentioned, we cannot say that the verdict of $4,000 was excessive.

Fifth assignment: "The court erred in giving instruction No. 3 requested by appellee." This instruction reads:

"If the jury find for the plaintiff, they will assess his damages at such a sum that will compensate him for the bodily injury sustained, if any; the physical pain and mental anguish suffered and endured by him in the past, if any, and that which will be endured in the future, if any, by reason of the said injury; his loss of time, if any; and his pecuniary loss from his diminished capacity for earning money through life, according to what you find his probable expectancy, if he had not received the injury complained of, if any; and the amount of money, expended for medicines and medical attention, if any; and from these, as proven from evidence, assess such damages as will compensate him for the injuries received."

The defendant objected both generally and specifically to this instruction; and the specific objection was:

". . . because there is no evidence sufficiently certain to submit to the jury upon which to base recovery for diminished earning capacity."

The plaintiff was 50 years old at the time of the injury, and it was stipulated that a person of that age

had expectancy of 20.91 years. The plaintiff testified that for five years before he received his injury, he had been employed by the Crossett Lumber Co. as a truck driver, and earned about $35 or $40 per week; that the only work he had done since he received his injury was as an overseer or foreman of a crew engaged in cutting a right of way for the Arkansas Power & Light Co. He was so employed at the time of the trial, and was then earning about $35 or $40 per week. From this evidence, the defendant argues that the plaintiff is making as much money now as before receiving his injury, and therefore has shown no diminished earning capacity. But it must be remembered: (1) that the jury saw the impairment of the plaintiff's arm, and knew whether he had thereby suffered a "diminshed capacity for earning money through life"; (2) that the evidence showed that the work as foreman of a right of way crew was merely a temporary, rather than a permanent, job; and (3) the plaintiff testified that his injury prevented him from doing the type of work he had formerly done. When these points are considered, it is obvious that there was some evidence to support the instruction as given. See *Ferguson & Wheeler Land, Lumber & Handle Co.* v. *Good,* 112 Ark. 260, 165 S. W. 628; *S. L. I. M. & S. Ry. Co.* v. *Oliver,* 92 Ark. 432, 123 S. W. 662; *Briley* v. *White,* 209 Ark. 941, 193 S. W. 2d, 326.

In disposing of the sixth assignment (on excessiveness of the verdict), we purposely omitted from the calculation the element of diminished earning capacity, because the verdict as rendered was not excessive, even if no part of the award was for diminshed earning capacity. If the verdict were for a large amount, then a different situation might be presented, but since the verdict was not excessive on the other elements of damages, then any error—and we do not say there was any—in instructing the jury to consider diminshed earning capacity, was rendered harmless by the jury's verdict. See *Lamden* v. *S. L. S. W. Ry. Co.,* 115 Ark. 238, 170 S. W. 1001; *Ferguson & Wheeler Land, Lumber & Handle Co.* v. *Good, supra; S. L. I. M. & S. Ry. Co.* v. *Oliver,*

*supra;* and cases collected in West's Arkansas Digest, "Appeal and Error," § 1068.

On the whole case we find no error, and the judgment is affirmed.